UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Ohio National Life Assurance Corporation, | ) ) ) | Civil Action No.: 1:05-2626-RBH |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING SUMMARY JUDGMENT** |
| | ) ) | |
| Georgia M. Morris, and Jo L. Reyes, f/k/a Jo L. Barrow, | ) ) ) | |
| Defendants. | ) ) ) | |

This is an interpleader action brought by plaintiff, Ohio National Life Assurance Corporation (Ohio), seeking the Court's assistance in resolving the dispute between Defendant Morris and Defendant Jo L. Reyes (hereinafter "Reyes") as to the proceeds of a life insurance policy issued on the life of James O. Barrow, III (hereinafter "Barrow"). Morris is the mother of Barrow, and Reyes is his ex-wife. Both asserted a claim to the life insurance proceeds on the Ohio policy. All of the issues and claims between the defendants have been settled regarding the distribution of the proceeds. The remaining claims that are pending before the Court are Morris' claim against Ohio for interest on the proceeds of the policy and her claim for a refund of unearned premiums paid by Morris on the policy.[1] Morris seeks summary judgment on her counterclaim for interest and return of premiums. Plaintiff has no objection to disbursement of funds now deposited with the court, with the exception

---

[1] The defendants have agreed in their settlement agreement filed with the Court as an attachment to their Joint Motion for Disbursement of Funds on October 20, 2006 that Morris would be entitled to any interest accruing on the full value of the policy and to any refund of premiums paid by her. Under the agreement, Reyes has waived any claim for interest on the insurance proceeds or for refund of unearned premiums and assigned them to Morris.

1

of $25,000 being retained to award the plaintiff attorney fees and costs, as long as plaintiff receives a discharge and release of all liability in connection with the funds (i.e., not only does it seek a discharge and release with regard to the life insurance proceeds and any competing claims of beneficiaries for those proceeds, and exposure to multiple liability claims; but it also seeks release and discharge as to the counterclaims for interest and refund of unearned premiums.)

Barrow was the son of Morris. He took out the life insurance policy in question in 1994. The policy was issued establishing the terms of the contract of insurance between the parties. The face amount of the policy issued to Barrow was $250,000.00. Barrow had borrowed approximately $6000.00 against the proceeds of the policy at the rate of 7.4% interest per annum. Thus, the value of the policy at the time of Barrow's death was $243,937.57.

While the plaintiff has filed a response to Defendant Morris' summary judgment motion, it does not appear that the plaintiff really disputes that there are no genuine issues of material fact. Rather, the plaintiff appears to argue that under the facts, it disagrees with the calculation of the amount of interest due and at what point it should begin to accrue and, further, whether Morris is entitled to a refund on premiums paid after the presumptive date of Barrow's death, September 18, 2002. The policy language provided: "Death proceeds include interest at the rate of at least 4.5% per year from the date of death to the date proceeds are paid or applied under an option." Plaintiff further argues it is entitled to attorney fees and costs in an interpleader action.

As stated in the plaintiff's statement of facts in response to the summary judgment motion: "Mr. Barrow was not seen after September 2002. In 2005 the U.S. Attorney's Office in South Carolina obtained information that Mr. Barrow had been killed in September 2002. It was not until July 25, 2005 that the Aiken County Probate Court issued an Order determining that Mr. Barrow died on September 18, 2002. A death certificate was subsequently issued indicating the presumptive date of

death of September 18, 2002."

Defendant Morris forwarded a copy of the death certificate to Ohio National by letter of July 25, 2005 and requested payment of the policy proceeds. The letter is stamped received on August 8, 2005. When Barrow's death was determined by the Probate Court, Morris terminated her payment of the premiums to Ohio. Defendant Reyes had sent a letter dated July 5, 2005 to Ohio National indicating an interest in the proceeds. It does not appear to be disputed that between September, 2002 and July 2005, Morris paid premiums on the policy totaling $5805.62.

Due to the conflicting claims, Ohio National obtained local counsel and filed this interpleader action on September 12, 2005.

Although not argued or briefed by counsel, the interpleader complaint was based on Fed. R. Civ. P 22 and not Title 28 U.S.C. § 1335 as argued by defendant Morris' counsel (Attorney Bruckner), and jurisdiction was based on diversity, 28 U.S.C. § 1332.[2] However, in the complaint itself, the plaintiff insurance company specifically stated at paragraph 14 the following: "Pursuant to Federal Rule of Civil Procedure 22, Plaintiff deposits with the Court the amount of $243,937.57 representing the full amount of death benefits under The Policy, thereby entitling Plaintiff to a full discharge of any and all liability under The Policy." However, not until October 11, 2006, were the proceeds actually deposited with the court by consent order.

Morris submits to the Court in her motion for summary judgment that she is entitled to interest on the proceeds of the policy from Barrow's date of death, September 18, 2002, until the date of the payment of the proceeds into this Court. She also submits that she is entitled to interest at the rate of

---

[2] See FRCP 22 for distinctions between Rule 22 and statutory interpleader. FRCP 22 interpleader does not require the deposit of the proceeds at the time suit is commenced as opposed to 28 U.S.C. § 1335, to establish jurisdiction as long as there is another basis for jurisdiction, as here, diversity, 28 U.S.C. §1332.

8.75% per annum on the proceeds pursuant to South Carolina Code Ann. §34-31-20 (1976), as amended. Morris also submits to the Court that she is entitled to a refund of the premiums which she continued to pay to Ohio between September 2002 and July 2005 which total $5,805.62. Morris submits to the Court that there are no material issues of fact to be adjudicated and that she is entitled to judgment on her counterclaim and these issues as a matter of law.

**Summary Judgment Standard**

Defendant filed her motion for summary judgment pursuant to Rule 56, Fed. R. Civ.P.  The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Analysis**

At the outset the court notes that equitable principles constitute "the genesis of interpleader." Humble Oil & Refining Co v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968).

*1. Interest*

Since this is a diversity action, the substantive laws of the State of South Carolina apply to the issues at bar. Twin City Fire Ins. v. Ben Arnold, 433 F.3d. 365, 369 (4th Cir. 2005). Since Morris' claim against Ohio is founded on issues of insurance and contract, the laws pertaining to life insurance and to the formation and enforcement of contracts in the State of South Carolina would apply to the case.

On page 17 of the policy, under the heading "Claims"--"Payment of Proceeds" the policy provides:

> Death proceeds include interest in the rate of at least 4.5% per year
> <u>from the date of death to the date proceeds are paid or applied under
> an option.</u>  (Emphasis added)

4

"The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment." Hansen v. United Service Automobile, 350 S.C. 62, 67, 565 S.E.2d 114 (Ct. App. 2002).

> An insurance contract is subject to the general rules of contract construction. "The purpose of all rules of construction is to ascertain the intention of the parties to the contract." Where the terms of a contract are clear and unambiguous, its construction is for the courts; but where the terms are ambiguous the question of the parties' intent must be determined by the jury. "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." Furthermore, "[a] contract is ambiguous only when it may fairly and reasonably be understood in more ways than one." Id., 565 S.E.2d at 117.

The language of the insurance policy at issue herein is unambiguous and cannot be understood in more than one way by a reasonable person. The policy states unequivocally that "interest shall run from the date of death to the date proceeds are paid.." The insurer which prepared this contract could have set the determinative date to be the date of proof of death, the date of claim, or any other number of significant dates for the interest to begin to accrue. Nevertheless, it provided simply that interest shall run from the date of death. Thus, the fact that Barrow's proof of death was not provided until July 2005 has no bearing on the fact the pertinent calculation date is September 18, 2002.[3] The official death certificate likewise establishes September 18, 2002 as the date of death. According to S.C. Code Ann. §62-1-107 the death certificate issued by an official or an agency in the place where the death

---

[3] In the case at bar, defendant Morris' brief indicated that the actual date of Barrow's death was established by testimony of his murderer and the sentencing of the murderer by a federal judge. Subsequently, the decision of the Probate Court of Aiken County, South Carolina relying on the criminal proceedings regarding the death of Barrow established the date of death as September 18, 2002. Plaintiff does not appear to dispute this finding.

5

reportedly occurred is prima facie proof of the fact, place, date and time of the decedent's death. The evidence at bar is undisputed that Barrow died on September 18, 2002. Pursuant to the insurance policy issued by Ohio, the date from which interest must begin to run is September 18, 2002.

In addition, the Court notes that South Carolina case law holds that because an insurer has the use of proceeds between the date of loss and the time money is paid, it is proper and equitable that the insurer pay interest on the proceeds from the time of loss. See, e.g., Jacobs v. American Mutual Fire Insurance Company of Charleston, 287 S.C. 541, 340 S.E.2d 142 (1986).

Ohio also claims that the interest should cease to accrue on the date that it brought this interpleader action. Ohio argued that since Morris objected to its motion to be dismissed from this action and to pay the proceeds of the policy into the court, she is estopped from claiming interest for the period following Ohio's motion. However, the court notes that Morris never objected to the insurer depositing the proceeds of the policy into the registry of the court. Morris only objected to the dismissal of Ohio while her counter-claim against Ohio was pending. Again, had Ohio delivered the funds in dispute into the registry of the Court at the time of the filing of the lawsuit, the funds would have earned interest in that account and prejudgment interest as against Ohio would have terminated. It is undisputed that Ohio has had these funds in its continued possession for close to another year during which time the insurer had the use of the money and continued to earn income on the entire amount of the death proceeds. Morris is therefore entitled to prejudgment interest from the date of the presumptive date of death, September 18, 2002, as indicated on the death certificate, until the proceeds were paid into the registry of the court.

Morris next contends that she is entitled to prejudgment interest at the rate of 8.75% per year. The contract of insurance between Ohio and the insured does not specify the rate of interest to be earned on the proceeds. However, the contract provides that the rate of interest would be *at least* 4.5%,

6

thus establishing a floor to the rate applicable without actually stating what the rate should be. In its motion for interpleader on January 12, 2006 to be dismissed from the case, and its proposed Order, Ohio offered to pay 5% on the proceeds "*from the date of death until the date of payment.*" However, Ohio offered no basis for this rate of interest. As a matter of fact, since the interest rate charged on monies borrowed by the insured against the policy is 7.4%, it can be argued that the applicable rate of interest should be 7.4%. However, the court finds that South Carolina law provides clear guidelines for the appropriate rate of interest. South Carolina Code Ann. §38-63-220 states:

> All individual life insurance policies must contain in substance the following:
>
> …(f) a provision that when a policy becomes a claim by the death of the insured, settlement must be made upon receipt of proof of death. When a policy provides for payment of its proceeds in a lump sum upon the death of the insured and the insurer fails to pay the proceeds within thirty days of submission of proof of death and all necessary claim papers needed in order to pay the claim properly, the payment must include interest at the legal rate of interest from the date of death of the insured until the date the claim is paid. (Emphasis added)

First, it is noted that in the policy provided to Barrow by Ohio there is no language complying with the requirement of this code section. Further, while proof of death was provided to Ohio on July 25, 2005, Ohio did not bring this action until September 12, 2005 and did not pay the proceeds into the Court until October of 2006. The legal interest rate for cases "wherein any sum or sums of money shall be ascertained" is at a rate of 8.75% per year under S.C. Code Ann.§ 34-31-20 (1976), as amended. [4] The Court finds that Ohio is required to pay prejudgment interest at the legal rate from the date of death until the funds were deposited with the Clerk of Court.

---

[4] *See* Security Insurance Co. of Hartford v. Arcade Textiles, Inc., 40 Fed. Appx. 767 (4th Cir. 2002) (unpublished), noting that prejudgment interest is a matter of state substantive law for courts whose jurisdiction rests on diversity.

## 2. *Refund of Premiums*

Morris also asserts that she is entitled to a refund of the premiums paid by her on the policy after the death of Barrow, between September 2002 and July 2005. South Carolina law provides ample support for Morris' position that she is entitled to a refund of the premiums. In <u>Pilot Life Insurance Company v. Cudd</u>, 208 S.C. 6, 36 S.E. 2d. 860 (1945), the insurer, which mistakenly paid a death benefit also refunded unearned premiums paid after the presumed death of the insured.

> It is a firmly established general rule that money paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund.

<u>Id</u>., 208 S.C. at 14.

A discussion of the law of money had and received can be found in <u>Okatie River v. Southeastern Site Preparation</u>, 353 S.C. 327, 577 S.E. 2d. 468 at 334-336 (Ct. App. 2003). Likewise see <u>Wachovia Bank of South Carolina, N.A. v. Thomasko</u>, 339 S.C. 592 (Ct. App. 2000), 529 S.E. 2d. 554 and <u>Harper v. McCoy</u>, 276 S.C. 170, 276 S.E. 2d. 782 (1981). These cases clearly hold that in situations where money is paid under a mistake of fact held by both parties, it is necessary for the recipient of the funds to repay them to the payor in order to avoid unjust enrichment to the recipient. In the case at bar there is little doubt that since Barrow was deceased, the payment of premiums continued after the date of September 18, 2002 under a mistake of fact, i.e., that he was still alive. Ohio would be unjustly enriched if it were allowed to simply keep these funds rather than return them to Morris. Ohio would be hard pressed to credibly argue that equity and good conscience require otherwise. Therefore, this court orders Ohio to refund the premiums to Morris which it collected after the date of Barrow's death, September 18, 2002, which it is an undisputed total of $5805.62.

## Attorney Fees Request by Plaintiff Ohio

As noted by Ohio in its request for attorney fees, it is settled that a disinterested stakeholder may be entitled to attorney fees and costs. However, the matter is discretionary with the court, and is governed by equitable principles as well, and, if there is substantial controversy between the interpleading party and others, or if the stakeholder desires further protection from the court in exonerating it from possible liability, an allowance may be denied. Wright and. Miller, Fed. Practice, Interpleader § 1719, pp. 677-679.

The plaintiff insurance company, in its complaint, specifically pled and clearly indicated it was depositing with the court the sum of $243,937.57 at the time of filing of the complaint and was seeking a release from all liability and that the action continue between the competing defendants who had filed claims for the insurance proceeds.

However, the plaintiff insurance company, *never* deposited the proceeds until October 11, 2006, by way of a consent order which specifically preserved the defendant beneficiary Morris' counterclaim for interest on the proceeds and a claim for a refund of unearned premiums. Prior to the October 11, 2006 consent order, the defendants both filed counterclaims against the plaintiff insurance company for either interest and/or refund of unearned premiums (See answer and counterclaim) of Morris dated October 5, 2005, and (answer and counterclaim) of Reyes dated November 7, 2005.

Having full knowledge of the pending counterclaims, on January 12, 2006 the insurance company filed what is labeled a "motion for interpleader on behalf of Ohio National Life Assurance Corporation" and e-mailed to Chambers a proposed Order, wherein it sought to deposit the funds and *complete dismissal* from the action. Interestingly and surprisingly, nowhere in the motion or the proposed Order did it mention there were pending counterclaims against the plaintiff insurance

9

company for the interest and refund of unearned premiums.[5]

In its response to the "motion for interpleader," at no time did the defendants object to the death proceeds being deposited with the court.  Rather, Morris was objecting to Ohio being dismissed from the action with prejudice because of the pending counterclaim against Ohio for interest and a refund of unearned premiums, neither of which were bought to the court's attention in Ohio's motion for interpleader and in its proposed Order.

Defendant Morris' objection clearly was not as to Ohio depositing the insurance proceeds with the court.  The objection was that the motion for interpleader had a "contingency" placed on it.  Ohio wanted to be completely dismissed from the lawsuit knowing full well that there were counterclaims against it for interest and refunds of unearned premiums.  Ohio conditioned its payment of the insurance proceeds into the court upon its *full* dismissal from the lawsuit and tried to use it as leverage against the defendants and their pending counterclaims of entitlement to prejudgment interest and refund of unearned premiums.  Ohio Casualty consciously chose not to pay the proceeds into the court no earlier than October of 2006 (see Consent Order to deposit funds of October 11, 2006).

Again, the court notes that equitable principles constitute "the genesis of interpleader." Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968).

Based on the information before the court, it exercises its discretion and denies an award of attorney fees and costs to the plaintiff.

### Conclusion

The court finds there are no genuine issues of material fact in dispute and all of the pertinent evidence is before the court.

---

[5]A copy of the plaintiff's e-mail correspondence to the Court and its proposed Order is being filed and made part of the record in this case (Docket # 80).

The court further finds, with respect to the insurance proceeds now deposited with the court, that the defendants who were formerly competing beneficiaries have reached a settlement agreement which is on file with this court. Under the terms of the settlement agreement, Defendant Morris would receive $172,687.57, and Defendant Reyes' children (who were Barrow's children) on her behalf would receive $71,250.00 ($23,750 for each of her 3 children), totaling $243,937.57.

However, Defendant Reyes' children are not parties before this court, and therefore the amount distributed by this Order shall be to Defendant Reyes and her counsel, Attorney Maxwell, as set forth below.

Accordingly, judgment is entered as follows:

(1) With regard to the plaintiff's complaint for interpleader regarding the sum of $243,937.57, this being the full amount of death benefits due under the policy, and now deposited with the court, the plaintiff is discharged and released from any liability, particularly from the risk of double or multiple liability with regard to these death insurance proceeds or any claim of entitlement to these proceeds with the exception of the judgment granted to the defendant Morris as set forth below. Further, with regard to these proceeds, they shall be distributed by the Clerk with $172,687.57 distributed to Defendant Morris and her attorney Bruckner along with any interest accrued on the total amount of the funds ($243,937.57) while in the hands of the Clerk of Court; the remaining amount of $71,250.00 shall be distributed by the Clerk to Defendant Reyes and her Attorney Maxwell for distribution by them to the children of Barrow in accordance with their settlement agreement filed with the Court. Attorney Maxwell is also directed to deposit these funds into his trust account to be distributed in accordance with the terms of the settlement agreement and mutual release. Further, to the extent any child is under the age of eighteen, attorney Maxwell shall comply with the requirements of South Carolina law concerning the appointment of a conservator for the protection of the minor's property or attorney

Maxwell shall maintain the funds in his trust account until the child attains the age of eighteen.

(2) Judgment is **GRANTED** to Defendant Morris on her counterclaim against plaintiff for prejudgment interest on the $243,937.57 sum with the same being calculated at the rate of 8.75% per year and starting at the date of death (September 18, 2002) and stopping on the date the funds were deposited with the court (October 11, 2006). By the court's calculation, this amount is $86,722.86.[6]

(3) Judgment is also **GRANTED** to the Defendant Morris against plaintiff on her counterclaim for refund of unearned premiums in the amount of $5,805.62.

**AND IT IS SO ORDERED.**[7]

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

Florence, S.C.
November 30, 2006

---

[6] This figure has been calculated utilizing simple rather than compound interest and the formula of "Interest = Principal x Rate x Time". (Interest = $243,937.57 x .0875 x 4.063) The figure of 4.063 for "Time" was arrived at as follows:  September 18, 2002 through September 18, 2006 is four years; September 18, 2006 through October 11, 2006 is 23 days. 23 divided by 365 days per year is .063. "Time" is 4.063 years.

[7] As motions docketed as #63 and #66 involved the claims between the co-defendants and they have settled the claims between themselves, they are rendered moot for docketing purposes.